**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SLIPPERY ROCK AREA | § | |
| SCHOOL DISTRICT, individually and on | § | |
| behalf of those similarly situated | § | |
| | § | |
|    Plaintiff, | § | Civil Action No.: |
| | § | |
| vs. | § | |
| | § | |
| TREMCO, INC., WEATHERPROOFING | § | |
| TECHNOLOGIES, INC., and RPM | § | |
| INTERNATIONAL, INC. | § | |
| | § | |
|    Defendants. | | |

## PLAINTIFF'S COMPLAINT – CLASS ACTION

COMES NOW the Plaintiff, SLIPPERY ROCK AREA SCHOOL DISTRICT, on its own

behalf and as a Class representative on behalf of all similarly situated persons and entities, and

submits the following Complaint against Defendants: TREMCO, INC., WEATHERPROOFING

TECHNOLOGIES, INC., and RPM INTERNATIONAL, INC.

## INTRODUCTION AND NATURE OF CASE

1.   RPM International, Inc. ("RPM"), through its subsidiaries, manufactures, markets,

and sells various specialty chemical products, including paints, protective coatings, roofing

systems, sealants and adhesives. Tremco, Inc. ("Tremco"), a major manufacturer and supplier of

roofing materials and a member of RPM's Building Solutions Group, is RPM's presence in the

"industrial segment" of the business. Tremco also supplies roofing and weatherproofing services

such as roofing restoration and repair services to both the government and private sector markets.

Weatherproofing Technologies, Inc. ("WTI"), an independent subsidiary of Tremco, supplies

roofing, construction, and general contracting services to building owners and facility managers in the United States.

2.      For years, Defendants have manufactured and sold roofing installation and weatherproofing services for buildings used by residences, school districts, hospitals, post offices, manufacturing facilities, and other businesses. As part of their offerings, Defendants, in particular RPM's Building Solutions Group (which includes Tremco) manufacture and sell specific and fluid applied roofing systems, cold and hot applied built-up roofing systems and membranes, metal roofs, modified bitumen and vegetated roofing systems, and all component parts to such roofing systems including engineered transition assemblies. Defendants further market and provide services for inspection, repair, and maintenance for roofing systems, building off of the products developed and manufactured by RPM and Tremco.

3.      Upon information and belief, Tremco knew since mid-2005 that its BURmastic roofing systems, which were installed over insulation board, had a strong potential to fail, and that many of these installed systems were, indeed, failing. Tremco knew that any of its "cold roofs" that were constructed with certain products were defective, or would likely become so, once exposed to winter's regular freezing and thawing cycles. The list of these materials includes composite ply, modified composite ply, premium composite ply, modified premium composite ply, supreme composite ply and modified supreme composite ply.  Defendants manufacture and sell BURmastic 200, 400 and 500 roofing systems, which systems Plaintiff and the members of the below-defined Classes allege are defective.

4.      This is an action to recover damages on behalf of Slippery Rock Area School District ("Slippery Rock") and the members of the below-defined Classes arising from

misrepresentations and false statements made by Defendants, its agents and employees, to Slippery Rock officials and Class members, all in violation of the laws of the Commonwealth of Pennsylvania, as well as from the sale of defective roofing products and the marketing of roofing construction and maintenance services, and for false statements, records and claims made and presented or caused to be made and presented, by Defendants and their agents and employees in violation of the law of the Commonwealth of Pennsylvania.

5.      Plaintiff, Slippery Rock, on behalf of itself and the members of the below-defined Classes, alleges that Defendants engaged in the following acts and/or omissions:

   a.  Sold to Slippery Rock and the members of the below-defined Classes expensive roofing materials without disclosing the availability of lower-cost, identical materials also manufactured and sold by Defendant Tremco;

   b.  Sold to Slippery Rock and the members of the below-defined Classes expensive roofing materials marketed as "superior" or "premium" that were actually equal in composition to the economy or generic products sold;

   c.  Sold and installed or caused to be installed on buildings owned by Slippery Rock and the members of the below-defined Classes, roofing products and systems with known defects;

   d.  Over-specified roofing materials beyond what was required to fulfill purchasing objectives, resulting in substantial overcharges for roofing materials;

   e.  Unnecessarily utilized Tremco's subsidiary as a general contractor and partnering with certain subcontractors in order to inflate costs and lock-out competition;

   f.  Unnecessarily controlled the bid process with over-specified and over-detailed bid specifications, thereby excluding competitors to successfully bid on proposed work; and

   g.  Used captive and/or conflicted third parties in supplying, bidding, supervising, and constructing the contracted-for work.

**PARTIES**

6.     Plaintiff, SLIPPERY ROCK SCHOOL DISTRICT ("Slippery Rock") is a Class Three school district with offices at 201 Kiester Road, Slippery Rock, Pennsylvania 16057. Slippery Rock High School and Moraine Elementary School, two of the four schools in Slippery Rock, solicited bids for new roofing and ultimately purchased roofing systems from Defendants.

7.     Defendant TREMCO, INC. ("Tremco") is an Ohio-based company that has done business in the Commonwealth of Pennsylvania in the past. Tremco is located at 3735 Green Road, Beachwood, Ohio. Tremco provides roofing and weatherproofing services, including roofing restoration and repair. Tremco is also a major manufacturer and supplier of roofing systems and materials.

8.     Defendant WEATHERPROOFING TECHNOLOGIES, INC. ("WTI") is an Ohio-based company that has done business in the Commonwealth of Pennsylvania in the past. WTI is located at 3735 Green Road, Beachwood, Ohio. WTI provides supplies roofing, construction, and general contracting services, including roofing restoration and repair.

9.     Defendant RPM INTERNATIONAL, INC. ("RPM") is a multi-national publicly-traded holding company headquartered at 2628 Pearl Road, Medina, Ohio. Tremco is a wholly-owned subsidiary of RPM.

**JURISDICTION AND VENUE**

10.     This is a Class Action lawsuit seeking monetary damages pursuant to Federal Rule of Civil Procedure 23.

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 and the parties are citizens

of different states.  Furthermore, jurisdiction is conferred upon this Court pursuant to the Class Action Fairness Act in that damages exceed more than $5,000,000 in the aggregate, and the parties are citizens of different states. 28 U.S.C. § 1332(d)(2).

12.     This Court has personal jurisdiction because Defendants' contacts with the forum are continuous and substantial and because the claims of Plaintiff and the Class arise out of Defendants' contact with the forum. Service can be hand upon the named Defendants through application of the Pennsylvania long-arm statute.

13.     Plaintiff is a citizen of the Commonwealth of Pennsylvania.

14.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly transact business in this District, and the unlawful practices were committed in this District. Venue is proper in the county of residence of any properly joined named class representative. Plaintiff Slippery Rock, Individually and as proposed Class Representative, is located and conducts business in Butler County, PA, and it is a properly joined class representative.

## RELEVANT FACTUAL BACKGROUND

**I.      Tremco's Fraudulent Activities to Increase the Cost of Products Sold to Slippery Rock and Class Members**

15.     Defendants sold an expensive brand-name, purportedly top-of-the-line roofing system and products to Slippery Rock and Class Members, rather than providing identical lower-cost alternative products.

16.     Many Tremco products sold under different names and different prices are in fact identical in composition, manufacturing process and location, durability, and in all other respects. These products differ only in Tremco name, label, and price. Tremco's internal

documents showing product composition demonstrate that the chemical compositions of the so-called "premium" or "superior" products are identical to those of the less expensive "generic" economy equivalents. Despite having the same production costs and compositions, the "superior" Tremco product was sold at a substantially higher price than the identical, but more "generic," economy product.

17.     Tremco's more expensive "superior" or "premium" products and their identical "generic" equivalents are listed below:

| "Superior" Product | Generic Equivalent Product |
|---|---|
| BURmastic Adhesive | PowerPly Cold Adhesive |
| Fast-n-Free Adhesive | Elite 100% Solids Insulation Adhesive |
| ELS Roof Cement | Elite Roof Mastic |
| Tremprime WB | Elite Waterbased Primer |
| Thermastic 50 | PowerPly Hot Melt Adhesive |
| Thermglass Type IV | PowerPly Type IV |
| Thermglass Type VI | PowerPly Type VI |
| Rubberized BURmastic | PowerPly Rubberized Adhesive |
| BURmastic Adhesive LV | PowerPly Adhesive LV |

The sole difference between the product lines was the name and label on the packages, and the prices.

18.     Tremco represented to consumers, including Slippery Rock and Class Members, that these "premium" products were superior, when in fact they were identical to products costing less, up to nearly 50% less, than the "superior" product.

6

19.     Tremco and WTI inflated prices to consumers, including Slippery Rock and Class Members, by utilizing partnerships with certain subcontractors to effectively eliminate competition and increase cost.

20.     Tremco sold an unnecessarily upgraded roofing system to Slippery Rock. Tremco sales representatives misrepresented that Slippery Rock needed particular upgrades or that certain features and products would create a safer roof, when in fact these costly upgrades or features were unnecessary and the increased specifications would not ensure a safer or higher-functioning roof. By over-specifying the roofing material requirements, Tremco "locked-out" competitors who could not fulfill these extraordinary and unnecessary specifications. Tremco thereby billed Slippery Rock for unnecessary and useless higher-cost products required to meet unneeded higher quality standards.

21.     Specifically, Tremco sold Slippery Rock and Class Members products with unnecessarily high specifications for wind uplift, tensile strength (a measurement of resistance to lengthwise stress), and elongation requirements for rubberized asphalt.

22.     Tremco created an environment of unfair bidding practices that favored contractors and third parties with whom Tremco already negotiated certain deals for products and services. Tremco provided the bidding specifications to Slippery Rock for its use, and such specifications favored certain contractors despite the requirement of anti-collusion.  Tremco's proposed specifications impeded the likelihood of successful bids by otherwise-qualified competitors, even though the specifications would not improve the quality of the roof nor reduce the cost. Such anti-competitive provisions included terms requiring that the bidder have previously completed five (5) similar roofs within 100 miles of the construction site that have

been installed for at least three (3) years; the manufacturer must have approved the installer for a period of five (5) years; that the supplier not have been in any business reorganization or bankruptcy within five (5) or more years; that the manufacturer have owned or leased for at least one (1) year a manufacturing facility that makes roofing products from raw materials (but no requirement that the roofing materials used on the job be from such facilities); that the manufacturer have a net worth in excess of $50 million; that the consumer rely on an approved manufacturer list, which included only Tremco; and listing within the product specifications only Tremco products, by company name.  The result, by example, is the approval of bids by roofing companies such as Fennick Group, Inc. d/b/a Strongland Roofing Systems on projects, which upon information and belief is owned by a family member of a designated Tremco project manager, Ryan Fennick.

## II.   Tremco's Defective Products

23.    Defendants owed a duty to manufacture, market, distribute, sell, and/or place into the stream of commerce products and systems that were not defective. Despite this obligation, Defendants continued to manufacture, sell, and market products unfit for their intended use.

24.    Defendants owed a duty to manufacture, market, distribute, sell, and/or place into the stream of commerce products and systems free of misrepresentations and misinformation about product identification, costs and services. Despite this obligation, Defendants not only continued to place defective materials into the stream of commerce, but misled the public and ultimate consumers regarding the composition of comparative products.

25.    The following are the Tremco roofing systems that contain defective components: BURmastic 200 roof systems; BURmastic 400 roof systems; and BURmastic 500 roof systems.

26.     Defendants further owed a duty to accurately report testing and safety ratings for roofing products.  Tremco had its own in-house fire-testing facility in Cleveland, Ohio. Until losing the ability in 2007 to use its own facility, Tremco's roofs enjoyed higher fire ratings than its competitors. Tremco falsely claimed that its roofs had high ratings for fire protection qualities.  Tremco lost its in-house certification and its higher fire code ratings after UL Laboratories independently tested and examined Tremco roofing at its own facility and could not duplicate the Tremco in-house results.

27.     Thermal expansion and contraction of the composite ply roofing system such as Tremco's BURmastic and related systems, causes the composite ply to ridge over the insulation joints.  Eventually, the ridges split, allowing water to enter the roofing system and the building. In internal documents, Tremco estimated that the failure rates could be as high as 80% in some regions.

28.     Tremco's cold roofs containing any of the following products are defective or will become defective if exposed to cycles of freezing and thawing: Composite Ply; Modified Composite Ply; Premium Composite Ply; Modified Premium Composite Ply; Supreme Composite Ply; and Modified Supreme Composite Ply.  Plaintiff Slippery Rock was sold the Modified Supreme Composite Ply.

29.     Tremco was aware of serious defects with the BURmastic composite ply and associated above-named products as early as June 2005. In a June 17, 2005 memo, Gregory Rudolph, Jr., Tremco Product Manager, described how Tremco's cost-cutting measures with respect to this product had compromised the quality of the felt and lowered the level of asphalt

coating. Mr. Rudolph, Jr. recommended that specific changes be made to the product to improve quality.

30.     Tremco was also aware that repairs it was making to these defective composite ply roofing systems were inadequate, as demonstrated by internal Tremco communications and Tremco communications with customers who complained about ongoing leaking problems despite repeated repairs to the same problem areas.

31.     Tremco was aware that the only successful way to deal with the defective composite ply roofs was to proactively address the problems that these roofs had with splitting. However, despite this knowledge, Tremco refused recommendations that the roofs be repaired prior to costly leaks occurring.  Tremco made an intentional and conscious decision not to disclose the defects in its products to avoid making it's to customers and shareholders aware of the extent of the defects in these roofs, and further to avoid the cost of proactive repairs or treatment.

32.     Defendant RPM had specific knowledge of these Tremco roofing defects and took actions to ensure that Tremco did not advise Federal, State or Local Governments, nor make any overt disclosure to customers or shareholders of the roofing defects. RPM was made aware of these defects in or around late 2008, when the extent of the defects were explained to RPM executive by Tremco.  Indeed, a meeting was subsequently held in February 2009 with top executives from Tremco and RPM (including Frank Sullivan, RPM CEO; Ron Rice, RPM Executive Vice President; and Randy Korach, President of Tremco). Also attending this meeting was Gregory Rudolph, then-Vice President of Tremco Product Systems; Tremco Roofing Division President Deryl Kratzer, and Barry Slifstein, RPM accounting officer also were present.

33.     At the February 2009 Tremco-RPM meeting, Roofing Division President Kratzer presented misleading information downplaying the extent of the Tremco cold roof defects. The executives of both companies also discussed the potential financial exposure. At this same meeting, it was represented that the total cost of proactive repairs would be approximately $30 million. The actual repair costs, however, are much higher than those represented at the February 2009 meeting.

34.     Notwithstanding the fact that the costs associated with correcting the defective roofs were grossly understated, the officials from Tremco and RPM still determined in this meeting that they did not want to publicly acknowledge the defects by undertaking proactive repairs because of the effects such public disclosure could have on the companies' share price. Following this meeting, Tremco Global President, Mr. Randy Korach, was informed of the full extent of the problems with composite ply and the scope of the defective products. Despite the scope of the information available, no action was recommended that included informing customers or shareholders of the defects.

35.     In February 2009, Vice-President of the Tremco Product Group, Mr. Rudolf, Jr., submitted a memorandum to Roofing Division President Kratzer, detailing again the known problems with the composite ply roofs and urging that the company make changes to the composition of the materials to correct problems with leaks. He further urged the company to "do the right thing" and expressly noted that Tremco was aware that "leaky roofs can cause many problems."  A copy of this memorandum is attached as Exhibit A.

36.     Although Tremco eventually made some changes in the type of felt material it was using in new roofs and in some repairs, which it is now believed are no longer followed in

all projects, it refused to take proactive measures to prevent damages that its Customers would ultimately experience upon the failure of the products, and further refused to openly announce such defects to the public and/or its shareholders.  Furthermore, Defendants continued to market and sell products it knew to be defective, including the products and roofing system sold to Slippery Rock.   This "bait-and-switch" tactic resulted in consumers' confusion in the marketplace as to not only the product being installed, but the manufacturing process and materials used in such manufacture.

**III.      Defendants' Sale and Installation of Roofing Product with Known Defects**

37.      Defendants knowingly installed or caused the installation of a defective roof on Slippery Rock's High School and Slippery Rock's Moraine Elementary School.

38.      Since at least June 2005, and most likely earlier, Tremco knew that its BURmastic roofing systems installed over insulation board had the potential to fail and that many of these roofs had failed or were failing.  Defendants failed to inform Slippery Rock and Class Members of the defects in roofs installed both before and after June 2005, when Tremco learned of its defective roofs and roofing products.

39.      Tremco manufactured and sold "Premium" III Asphalt, Type IV Fiberglass felt, Fas-N-Free Adhesive, ELS Roof Cement, Tremprime WB, and BURmastic Modified Supreme Composite Ply to Slippery Rock.  Tremco did not inform Plaintiff of the defects in its products, the likelihood of failure, or the availability of products equal to the higher-priced products in composition.

## CLASS ALLEGATIONS

40.     Plaintiff brings all Counts and Causes on behalf of itself, and further brings Counts II – VII as Class Representative on behalf of all other similarly situated individuals and/or persons, pursuant to Federal Rule of Civil Procedure 23(a), (b).

41.     Plaintiff defines this Class as follows:

> *any and all persons and/or entities that purchased a "premium" or "superior" Tremco roofing product or a BURmastic roofing system, or one or more of the defective component parts of such system, or that owned real property on which a "premium" Tremco roofing product or BURmastic roofing system, or one or more of the defective component parts of such system, was sold and installed.*

Additionally, proposed sub-classes may ultimately be defined as:

> <u>"Premium Product" subclass</u> - *any and all persons and/or entities that owned or currently own real property on which a "premium" or "superior" Tremco roofing product was sold and installed.*

> <u>"Defective Product" subclass</u> - *any and all persons and/or entities that owned or currently own real property on which a BURmastic roofing system, or one or more of the defective component parts of such system, was sold and installed.*

> <u>Alternative "Pennsylvania" subclass</u> - *any and all persons and/or entities who purchased from Defendants in Pennsylvania or owned real property in Pennsylvania upon which was installed one or more "premium" or "superior" Tremco roofing products or a BURmastic roofing system, or one or more of the defective component parts of such system.*

Such proposed sub-classes may also ultimately be separated into Class Members that suffered additional property damages to the extent necessary.

42.     The following persons and/or entities are excluded from the Class:

a.  Persons and/or entities who timely opt-out of this proceeding using the correct protocol for opting-out that will be formally established by this Court; and

13

    b.   Any currently sitting Pennsylvania state court judge and/or justice in the current style and/or any persons within the third degree of consanguinity to such judge and/or justice.

43.    In the unlikely event that the Court should determine not to certify a nationwide Class, then in the alternative, Plaintiff seeks certification of the above-identified Pennsylvania-only Class.

44.    **Numerosity – Rule 23(a)(1).** Plaintiff does not know the exact size or identities of the members of the proposed Class, since such information is in the exclusive control of Defendant.  Plaintiff believes, however, that the Class encompasses many hundreds and perhaps thousands of individuals and entities whose identities can be readily ascertained from Defendant's books and records. Additionally, based on information and belief, the Class is comprised of persons and/or entities disbursed across the United States, as well as in the Commonwealth of Pennsylvania. As a result, joinder of persons and/or entities is impracticable. The disposition of Plaintiff's claims will provide a substantial benefit to the persons and/or entities, as well as the court system, by using Rule 23 as the vehicle to adjudicate the rights of hundreds of persons and/or entities into one cause of action. Joining and naming each Class Member as a co-plaintiff is unreasonable and impracticable. Such a requirement would only result in Defendants' retention of money which is necessary to compensate this Class to remedy and/or remediate the damage caused by Defendants' defective products.

45.    **Predominance and Commonality – Rule 23(a)(2); (b)(3).** There is a well-known commonality of interests in common questions of law and fact that affect Class Members. As to the Class, there are common questions of law and fact which predominate over any questions affecting individual Class Members which include, but are not limited to:

a. Whether Defendant's roofing products and systems are defective;

b. Whether Defendants knew its roofing products and systems were defective at the time they were marketed, distributed and sold;

c. Whether the Plaintiff's use of the roofing products and systems was foreseeable;

d. Whether the defect was a proximate and/or producing cause of Plaintiff's injuries;

e. Whether the imposition of strict liability upon Defendants serves as an incentive to properly manufacture, market, distribute, sell and install products free of defects;

f. Whether Defendants can distribute the cost of compensating for injuries and/or damages resulting from defects by charging for it in the market place;

g. Whether the roofing products and systems were inspected and reached the user and/or consumer without substantial alteration in the condition that the products were manufactured, marketed, distributed, and sold;

h. Whether Defendants failed to warn consumers that its roofing products and systems may contain defects;

i. Whether the Defendants sold products at higher prices based upon a "premium" or "superior" classification that were identical in composition, manufacturing process and location, and durability as the lower-priced products;

j. Whether the Defendants breached the implied duty of merchantability;

k. Whether the Defendants breached the expressed warranty of merchantability;

l. Whether the Defendants violated the Pennsylvania Unfair Trade Practice and Consumer Protection Act;

m. Whether Plaintiff is entitled to an determination of negligence under the doctrine of *res ipsa loquitur*;

n. Whether restitution is an appropriate remedy for Class Members;

o.   Whether remediation and/or removal of the defective roofing products and/or systems is the appropriate remedy for Class Members;

p.   Whether Class Members are entitled to monetary damages for Defendants' wrongful conduct;

q.   Whether Class Members are entitled to an injunction requiring the Defendants to cease and desist from selling, distributing, and/or placing into the stream of commerce its defective products;

r.   Whether Defendants shall be enjoined from manufacturing, marketing, selling, distributing, and/or placing their defective products into the stream of commerce without adequate safety measures to prevent injury, harm, and/or property damage caused by the defective products;

s.   Whether Defendants shall be enjoined from selling, marketing, and/or distributing their products without modifications to the structures on which their products are installed to ensure against injury, harm and/or property damage;

t.   Whether Defendants are required to pay reasonable and necessary attorneys' fees and costs associated with prosecuting this lawsuit.

45.   **Typicality – Rule 23(a)(3).** The claims asserted by Plaintiff are typical of the claims of the Class.  The Class Members and Plaintiff all had Defendants' defective roofing products and/or systems installed on structures they own, or purchased such defective goods and are unable to use same due to these defects, all of which poses an unreasonable risk and/or danger. Defendants failed to disclose the defects in their products and the associated danger posed by such products to real and personal property. Defendants failed to disclose fraudulent pricing structures and the availability of generic equivalent products in lieu of Plaintiff and the Class purchasing the higher priced, so-called "superior" or "premium" products.  Defendants failed to disclose to Plaintiff and the Class that prices for such "premium" products was inflated and utilized partnerships and contractors to eliminate competitive bidding and construction

practices, all of which resulted in Plaintiff and the Class to pay inflated prices on products and services sold to them by Defendants.

46. **Adequacy of Representation – Rule 23(a)(4).** Plaintiff will fairly and adequately represent the interests of the Class. The interests of the Class are not antagonistic with those of the Plaintiff, Slippery Rock. The Plaintiff has the ability to assist and adequately protect the rights of the Class during this litigation. Further, the Plaintiff is represented by legal counsel who is competent and experienced in this type of Class Action litigation.

47. **Superiority – Rule 23(b)(3).** This Class Action is not only the appropriate method for the fair and efficient adjudication of the controversy, but is, in fact, the superior method to all other available causes of action for the following reasons:

a. The joinder of hundreds of geographically diverse individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. There is no special interest by Class Members and individually controlling prosecution of separate causes of action;

c. Class Members' individual claims now may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, expensive, if not totally impossible, to justify individual Class Members addressing their losses;

d. When Defendants' liability has been adjudicated, claims of all Class Members can be determined by the Court and administered efficiently in a manner which is far less erroneous, burdensome, and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

e. This Class Action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of class claims to promote economies of time, resources, and limited pool of recovery;

f. This Class Action will assure uniformity of decisions among Class Members;

g.  Without the Class Action, Class Members will go without restitution or money damages;

h.  Without this Class Action, the restitution and/or remediation damages will be ordered and Defendants will reap the benefits of profits from defectively manufactured, marketed, and/or distributed products and systems;

i.  The resolution of this controversy through this Class Action presents fewer management difficulties than individual claims filed in which the parties may be subject to varying indifferent adjudications of their rights;

j.  Injunctive relief will be available to protect all future consumers from the sale, marketing, and/or distribution of defective products and systems. (FED. R. CIV. P. 23(b)(2)).

## CAUSES OF ACTION

48.  Any condition preceding the institution of this lawsuit have been performed, have occurred, and/or have been waived.

49.  By filing this lawsuit, Plaintiff neither intends to, nor in fact do, waive or release any right, claim, action, cause of action, defense and/or election of remedies that they may now or ever have.

50.  Defendants' fraudulent concealment tolls the running of any applicable statute of limitations.  In the alternative, Plaintiff and the Class Members could not have, with the exercise of real caution, prudence, or diligence, discovered the defect within the applicable statute of limitations. As a result, the statute of limitations is tolled making all claims timely filed.

## COUNT I
### (Breach of Contract)

51.  The foregoing paragraphs are incorporated by reference as though set forth at length herein.

52.     Slippery Rock entered into a contract with Tremco by which Tremco agreed to provide certain roofing materials and roofing construction services through a bid process.

53.     By mutual assent, the parties agreed Tremco would, at the very least, exercise the duty of care ordinarily exercised by other manufacturers and construction service providers.

54.     Tremco, by providing defective roofing materials, materially breached the agreement between the parties.

55.     Tremco has no defense for its blatant failures to disclose the defects in its roofing materials. Furthermore, Tremco has no defense for its failure to exercise the ordinary skill, knowledge and care normally possessed and exercised by manufacturers or contractors.

56.     The above-described conduct of Tremco materially breached the agreement between the parties in that Tremco grossly overcharged Slippery Rock, failed to disclose the defective nature of its products, provided defective roofing products and system, and failed to disclose that its "premium" products were inherently identical to its less non-"premium" products.

57.     As a result of Tremco's material breaches of its agreement with Slippery Rock, Slippery Rock has suffered monetary losses, and has incurred extraordinary repair fees, costs, and expenses, including those associated with the need to bring this litigation.

## COUNT II
### (Fraud)

58.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

59.     Tremco made misrepresentations to Slippery Rock with respect to Tremco's "premium" or "superior" products, which are inherently identical in manufacturing, production costs, and composition to Tremco's less expensive "generic" products.

60.     Tremco knew that its expensive "premium" products were nothing more than relabeled "generic" Tremco products that cost nearly 50% less than the "superior" product, yet Tremco misrepresented the nature of its "premium" products by renaming them and falsely touting their "premium" quality with the intention that consumers, including Slippery Rock and the members of the Class, would rely on those misrepresentations. Such representations were material

61.     Slippery Rock and the Class justifiably relied on Tremco's misrepresentations, and purchased the "premium" roofing products, to their financial detriment.   Alternatively, Slippery Rock and the Class paid an unfair premium price for products that were actually economy materials or products.

### COUNT III
### (Intentional Misrepresentation)

62.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

63.     Tremco represented that its "premium" or "superior" roofing products were superior in composition, functionality, and grade to its "generic" products.

64.     Tremco also stated that Slippery Rock required costly upgrades and increased specifications that were unnecessary and did not ensure a safer or higher-functioning roof.

65.     Tremco's representations about the "premium" or "superior" products were material to its sales transactions because they resulted in much higher costs to the consumer, including Slippery Rock and the Class.

66.     Tremco's representations about unnecessary upgrades or premium products were material to the transaction at hand because the representations allowed Tremco to effectively lock out competing bidders by limiting the products or systems allowed in the bidding process and for installation, and to overcharge Slippery Rock for the higher specification roof.

### COUNT IV
### (Fraudulent Concealment)

67.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

68.     Defendants had a duty to disclose and provide notice to Plaintiff and the Class of the knowledge of the defects in their products.

69.     Rather than disclosing this information to Plaintiff and the Class, Defendants actively and fraudulently concealed that their products were defective, unfit for their ordinary and/or intended use, and/or would result in injury, harm, and/or property damage.

70.     Defendants concealed and suppressed material facts concerning the quality of roofing materials and systems and failed to provide notice to the public of known defects.

71.     Defendants had a duty to disclose the true composition of its products and further of the defects in the roofing products because such information was known and/or accessible only to the Defendants, who had superior knowledge and access to the facts, and the Defendants knew it was not known to or reasonably discoverable by Plaintiff and the Class.  These omitted and concealed facts were material because they directly impact the usefulness and safety of the

roofing products, and yet Defendants acted to ensure such information remained concealed.

72.     Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they purchased and retained roofing products that they would not have purchased or installed in their homes had Defendants timely disclosed the materials facts and notice of defect.

73.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich itself.  Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT V
### (Negligence)

74.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

75.     Defendants acted with negligence in the design, manufacture, and marketing of known defective products and roofing systems.  Defendants had a duty to provide products without defects, and further a duty to market materials without misrepresentation or confusion as to the composition of such products.  The Defendants breached such duties, and this breach proximately caused the Plaintiff and the Class members injuries.  Such injuries resulted in the Plaintiff and Class suffering actual damages.

76.     Defendants further acted negligently in the creation and oversight of the Slippery Rock bid process and in the selection of installers or contractors based upon internal or incestuous relationships or upon standards and specifications that only Tremco's preferred

contractors would be eligible for competition or acceptance.  Such breach of duties resulted in higher pricing or unnecessary work or products being charged for projects.

## COUNT VI
### (Products Liability)

77.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

78.     RPM, Tremco, and WTI are manufacturers, sellers, distributors, and/or contractors of specific roofing products and systems.

79.     BURmastic 200 roof systems; BURmastic 400 roof systems; and BURmastic 500 roof systems and their component parts are defective as manufactured, marketed, and sold.

80.     A manufacturer, seller, or distributor may be held liable for harm that occurs in "in connection with a product's intended use by an intended user."  Plaintiff and the Class purchased and/or installed a BURmastic 200 roof systems; BURmastic 400 roof systems; and BURmastic 500 roof systems and/or defective component parts of such systems.

81.     Section 402A of the Restatement (Second) of Torts provides that (1) one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.  Under section 402A, the seller of a product that is in a defective condition unreasonably dangerous to the ultimate user or consumer will be liable to that user or consumer.

82.     Defendants defectively manufactured, designed, marketed, or caused to be installed products (or manufactured, designed and marketed products that contained inadequate or improper warnings and/or instructions in light of weather conditions or needs) that were improper for intended uses.

83.     Plaintiff and the Class purchased or had installed BURmastic 200 roof systems; BURmastic 400 roof systems; and BURmastic 500 roof systems or defective component parts, and such defects existed at the time the product left Defendants' hands.  Such defects was the proximate cause and producing cause of damages to the Plaintiff and Class.

<u>COUNT VII</u>
**(Violation Of Pennsylvania's Unfair Trade Practices And Consumer Protection Law)**

84.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

85.     Defendants had a duty to disclose and provide notice to Plaintiff and the Class of the knowledge of the defects in their products.

86.     Plaintiff and the Class members are "person[s]" as that term is defined by 73 P.S. § 201-2(2).

87.     Defendant's conduct and omissions alleged herein occurred throughout the Commonwealth of Pennsylvania, and constitutes deceptive conduct that creates a likelihood of confusion or misunderstanding in connection with the usefulness, quality, safety and desirability of its roofing products that Defendants sold.

88.     Defendants' conduct and omissions alleged herein violated Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(4), including but not limited to:

(i) Passing off goods or services as those of another;

(ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

(ix) Advertising goods or services with intent not to sell them as advertised;

(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

(xxi) Engaging in any other fraudulent or deceptive conduct which creates likelihood of confusion or of misunderstanding.

89.    From at least 2005, Tremco had knowledge that its roofing products were defective as marketed, manufactured, and sold and further knew that its pricing scheduling for "superior" and "premium" products was false.  From at least February 2009, all Defendants had such knowledge and cooperatively and actively hid (and continues to make efforts to hide) the defects in the design, manufacture, and use of these products.  Consequently, the public, including Plaintiff and the Class, received no notice of the true composition of the roofing products and associated "premium" pricing, nor did they receive notice of the defective products and systems or the substantial risks posed by same.

90.    By failing to disclose and by actively concealing the above facts, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.

91.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Class.

92.     Because of its violations detailed above, Defendants caused actual damage and, if not stopped, will continue to harm Plaintiff and the Class.  Plaintiff and the Class members currently have these products installed in their owned real property, or have purchased and are unable to use or otherwise forced to replace such products and systems because of the defects. Had Defendants timely disclosed notice of the defects, Plaintiff and the Class would either not have purchased the product at all, or would have paid less for the products.  Plaintiff and the Class did not receive the benefit of their bargain

93.     Plaintiff and the Class face the risk of irreparable injury as a result of Defendants' acts and omissions in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and these violations present a continuing risk to Plaintiff and to the general public.

94.     Plaintiff and other members of the Class pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, § 201-9.2 seek to recover either their actual damages or one hundred dollars ($100.00), whichever is greater, together with trebling of actual damages, counsel fees, expenses and costs, as well as any and all such other items of damage and equitable relief available.

## COUNT VIII
### (Enterprise/Joint Venture)

95.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

96.     The BURmastic 200 roof systems; BURmastic 400 roof systems; and BURmastic 500 roof systems at issue in this Complaint were manufactured and marketed by the Defendants, and such Defendants had joint knowledge of the risks or defective nature inherent in the

products and possessed a joint capacity to reduce those risks.

97.     Rather than taking the steps to reduce the risk of harm inherent in the product or otherwise inform its consumers of the defects, Defendants opted not to disclose the existence or effect of the defects in order to protect its market-shares, shareholder expectations, and profit margins.

98.     Plaintiff and the Class suffered harm by the joint and collusive actions of the Defendants both in pricing and in quality of product and installation.

## COUNT IX
### (Concerted Action)

99.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

100.    Defendants committed a tortious act in concert with each other and/or pursuant to a common design with each other in their pricing, up-charging, and ultimate sale of roofing products and roofing systems to Plaintiff and the Class.

101.    Under the concerted action theory as found in section 876 of the Restatement (Second) of Torts and as recognized by Pennsylvania, Defendants are subject to liability for harm resulting to Plaintiff and the Class by acting in concert or pursuant to a common design, or in light of the knowledge that other's conduct constituted a breach of duty and yet still provided substantial assistance or encouragement to the Defendants so to conduct themselves. Alternatively, each Defendant provided substantial assistance to the other in accomplishing a tortious result.

102.    Plaintiff and the Class suffered harm because of the concerted actions of the Defendants both in the damages of up-charging, "premium" pricing and in the quality of product

and installation ultimately received.

## COUNT X
### (Civil Conspiracy)

103.    The foregoing paragraphs are incorporated by reference as though set forth at length herein.

104.    Defendants acted combined or in concert with intent to commit an unlawful act or do an otherwise lawful act by unlawful means.  Indeed, these Defendants acted with a common purpose to do an unlawful act or to do a lawful act by unlawful means or unlawful purpose through the overt and intentional act of concealing the defect of their products and services, and further in representing "premium" or "superior" products were to be installed when there was a common purpose and intent to not only oversell what was needed, but further to charge prices for premium goods with economy composition.

105.    Defendants utilized a "bait-and-switch" technique of product-naming or branding as well as altered the underlying manufacturing and design process without informing Plaintiff or the Class, which either directly or inferentially establishes the requisite elements of conspiracy.

106.    Plaintiff and the Class incurred actual legal damage as a result of the civil conspiracy.

## COUNT XI
### (Breach of Express Warranty)

107.    The foregoing paragraphs are incorporated by reference as though set forth at length herein.

108.    Defendants have expressly warranted that its roofing products and systems

comply with recognized industry standards and all other applicable laws and regulations. Defendants expressly noted performance levels recognized by industry such as the FM Approval Guide, American Society for Testing and Materials, the Asphalt Roof Manufacturer Association, and/or the National Roofing Contractors Association.

109.    Defendants further expressly warranted and marketed that its "superior" and "premium" products were of a higher quality and condition than other available products.

110.    Defendants' warranties became part of the basis of the bargain in selling its roofing products and systems to Plaintiff and Class members.

111.    Defendants breached these express warranties by selling and/or distributing "superior" or "premium" products that were the same or significantly indistinct from general or less-expensive product options.

112.    Plaintiff and members of the Class paid money for these products and paid to have the products installed in their homes, businesses, and other spaces.  However, Plaintiff and the members of the Class did not obtain the full value of the advertised products. If Plaintiff and other members of the Class had known the true nature of the composition of the products and the comparative composition of the less expensive options, and further had Plaintiff and Class members been aware that such products were actually defective and insufficient for the intended uses, they would not have purchased same.

113.    As a result of this breach, Plaintiff and the members of the Class suffered injury and deserve to be compensated for the damages they suffered.

114.    Plaintiff and the Class are therefore entitled to recover compensatory damages, declaratory relief, and other relief as specifically prayed for herein.

## COUNT XII
## (Breach of Implied Warranty)

115.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

116.     Implied in the purchase of the roofing products by Plaintiff and the Class is the warranty that the purchased products are legal, safe, and can lawfully be sold and possessed.

117.     Defendants knew or reasonably should have known that its roofing products were defective.

118.     When Defendants sold these products, they implicitly warranted that the products were merchantable in that they were legal, proper for its intended use, and could be lawfully and safely possessed and/or sold.

119.     No reasonable consumer would knowingly purchase a product that is defective or improper for the designed use, nor would any reasonable consumer knowingly or voluntarily pay a "premium" price for products that are of the same composition as the lesser-priced options.

120.     The identified roofing products are unfit for the ordinary purpose for which they were intended.   These products are mislabeled, defective, and economically worthless. As a result, Plaintiff and the Class were injured through their purchase of unsuitable, useless, and unsellable products.

121.     Plaintiff and the Class were damaged in the amounts they paid for the identified product, the amounts they paid to have it installed, and the amounts they now must pay to have it removed.

## COUNT XIII
**(Punitive Claims)**

122.     The foregoing paragraphs are incorporated by reference as though set forth at length herein.

123.     Punitive damages are properly awarded for conduct that is outrageous, because of evil motive, or in light of reckless indifference to the rights of others.  Defendants acted individually and collectively to harm the Plaintiff and Class members, and did so with full knowledge of the "premium" and "superior" pricing matrices, bidding processes and techniques, and defective product manufacturing, marketing, and ultimate sales.

124.     In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant. Defendants acted with knowledge and intent, or otherwise with conscious indifference to the needs of its targeted consumers, and such conduct warrants civil punishment and damages.

## COUNT XIV
**(Declaratory Relief)**

125.     Plaintiff and the Class incorporate by reference the foregoing allegations as if set fully herein.

126.     Plaintiff, on behalf of itself and all others similarly situated, contend that Defendants' marketing and sale of defective roofing products does not comply with legal and industry standards.

127.     A judicial declaration is necessary and appropriate at this time in order that each

of the parties may know their respective rights and duties and act accordingly.

## RELIEF REQUESTED

Plaintiff, SLIPPERY ROCK SCHOOL DISTRICT, Individually and as Class representative on behalf of all similarly situated persons and/or entities respectfully requests that the Court grant the following relief and/or enter judgment against the Defendants, jointly and severally, for the following:

A.      Certify this cause of action as a class action pursuant to Federal Rule 23 and appoint Plaintiff as Class representative and Plaintiff's counsel as Class counsel;

B.      Award appropriate monetary damages to Plaintiff and the proposed Class in an amount equal to the amount to the cost incurred in purchasing same, and further the cost to remove the defective products and to install products and systems free of defects in material or warranty;

C.      Award an amount equal to the difference in what Plaintiff and the Class paid for superior or premium products and the cost for the generic equivalent products and/or systems;

D.      Award an amount equal to property damage incurred as a result of the defective products or roofing systems;

E.      Awarding such equitable relief permitted, including an injunction requiring Defendants to notify all Class Members that they are entitled to submit an additional or supplemental request for payment in connection with any prior loss and/or damage to their structures and/or premises, including personal property;

F.      Awarding diminished value damages reflecting the diminished value to the structures since they now contain a defective roof product or system, thereby diminishing its

overall value in the market place;

G.     Awarding pre-judgment interest to prevent Defendants from receiving unjust enrichment stemming from their misrepresentations and/or fraudulent conduct;

H.     Awarding reasonable and necessary attorneys' fees and costs to Class counsel;

I.     Awarding actual, compensatory, consequential, exemplary, and/or incidental damages as the Court deems appropriate and just;

J.     Awarding such other and further relief in law or in equity as the Court determines is fair, reasonable, appropriate, and/or deems just.

K.     An order finding in favor of Plaintiff and Class Members on all counts asserted.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: August 4th, 2016.

Respectfully submitted,

ROBERT PEIRCE & ASSOCIATES, P.C.


By:____*/s/ D. Aaron Rihn*_____
D. AARON RIHN, ESQUIRE
Pennsylvania Bar No. 85752
707 Grant Street
Pittsburgh, PA 15219
Telephone: (866) 273-1941
Facsimile: (412) 281-4229


MEDURE BONNER BELLISSIMO PEIRCE
& DALEY


By:_*/s/ Jason Medure*_____
JASON MEDURE

Pennsylvania Bar No. 90976
22 North Mill Street
New Castle, PA 16101
Telephone: (724) 653-7855
Facsimile: (724) 202-7918

By: _/s/ Michael Bonner_____
MICHAEL BONNER
Pennsylvania Bar No. 86023
22 North Mill Street
New Castle, PA 16101
Telephone: (724) 653-7855
Facsimile: (724) 202-7918

CARPENTER & SCHUMACHER, P.C.

BY:_____/s/ N. Scott Carpenter_____
N. SCOTT CARPENTER (**pending pro hac vice**)
Texas Bar No. 00790427
REBECCA BELL-STANTON (**pending pro hac vice**)
Texas Bar No. 24026795
Parkway Centre IV
2701 N. Dallas Parkway, Suite 570
Plano, Texas  75093
972-403-1133
972-403-0311

BELLISSIMO & PEIRCE

By:____/s/ Joseph S. Bellissimo_____
JOSEPH S. BELLISSIMO
Pennsylvania Bar No. 70897
22 North Mill Street
New Castle, PA 16101
Telephone: (724)
Facsimile: (724)

ATTORNEYS FOR THE PLAINTIFF AND
CLASS MEMBERS